UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SIMON E. KIRK,

                                 Plaintiff,                    08-CV-6016 (CJS)

        -vs-
                                                              DECISION AND ORDER

NEW YORK STATE DEPARTMENT OF
EDUCATION, RICHARD P. MILLS, Commissioner
of Education, NEW YORK STATE BOARD OF
REGENTS, and ROBERT M. BENNETT, Chancellor
of the New York State Board of Regents,

                                 Defendants.
_____

APPEARANCES

For Plaintiff:              Margaret A. Catillaz, Esq.
                            A. Paul Britton, Esq.
                            Harter, Secrest & Emery LLP
                            1600 Bausch & Lomb Place
                            Rochester, New York 14604


For Defendants:             Gary M. Levine, Esq.
                            Office of the New York State Attorney General
                            144 Exchange Blvd., Suite 200
                            Rochester, New York 14614


INTRODUCTION

In this action, Plaintiff Simon Kirk ("Plaintiff"), a veterinarian and a citizen of

Canada, alleges that New York State Education Law § 6704 is unconstitutional, since it

restricts the granting of professional veterinarian licenses to United States Citizens and

aliens lawfully admitted for permanent residence in the United States.  Now before the

1

Court are the following motions: 1) Plaintiff's motion [#27] for summary judgment; and

2) Defendant's cross-motion [#35] for summary judgment.  For the reasons that follow,

Plaintiff's application is granted and Defendants' application is denied.

BACKGROUND

Plaintiff is a Canadian citizen who seeks to obtain a license to practice veterinary

medicine from the State of New York.  Although Plaintiff is neither a United States

citizen nor a Permanent Resident Alien, he has, by virtue of the North American Free

Trade Agreement ("NAFTA"), obtained a TN Visa that permits him to live and work in

the United States temporarily.[1]   In that regard, the relevant regulation provides that "a

citizen of Canada or Mexico who seeks temporary entry as a business person to

engage in business activities at a professional level may be admitted to the United

States in accordance with the North American Free Trade Agreement (NAFTA)." 8

C.F.R. § 214.6(a).  The regulation further states:

> Temporary entry, as defined in the NAFTA, means entry **without the
> intent to establish permanent residence.** The alien must satisfy the
> inspecting immigration officer that the proposed stay is temporary. A
> temporary period has a reasonable, finite end that does not equate to
> permanent residence. In order to establish that the alien's entry will be
> temporary, the alien must demonstrate to the satisfaction of the inspecting
> immigration officer that his or her work assignment in the United States
> will end at a predictable time and that he or she will depart upon
> completion of the assignment.

8 C.F.R. § 214.6(b) (emphasis added).[2] Apparently, Plaintiff was granted a TN Visa for

the specific purpose of allowing him to practice veterinary medicine in the United

---

[1]NAFTA allows certain Canadian and Mexican professionals temporary entry into the United States to practice their profession. *See*, 8 C.F.R. § 214.6.

[2]Despite NAFTA's requirement that Plaintiff not intend to remain permanently in the United States, Plaintiff is presently attempting to obtain Permanent Resident Alien status.(Kirk Affidavit [#14] ¶ ¶ 15-18).

States. (See, Kirk Affidavit ¶ ¶ 10-11; NAFTA Appendix 1603.D.1.).

As mentioned above, the State of New York restricts the issuance of veterinary licenses to United States citizens or aliens lawfully admitted for permanent residence in the United States.  In that regard, Education Law § 6704(6) states, in relevant part: "To qualify for a license as a veterinarian, an applicant shall fulfill the following requirements: . . . (6) Citizenship or immigration status: be a United States citizen or an alien lawfully admitted for permanent residence in the United States[.]" It is undisputed that, apart from this requirement, Plaintiff meets all the requisites needed to qualify for a veterinarian's license.  Further, Plaintiff was able to obtain a temporary waiver of the citizenship/immigration status requirement by providing proof "that there [was] a shortage of otherwise qualified veterinarians." Education Law § 6704(6).  As a result, the State of New York issued Plaintiff a limited license, pursuant to which he has practiced veterinary medicine in the Town of Brighton, New York, for almost four years. However, such waiver remains valid only through July 2008, and cannot be extended.

Plaintiff commenced the subject action pursuant to 42 U.S.C. § § 1981 and 1983 to challenge the constitutionality of the citizenship requirement found in Education Law § 6704(6).  Specifically, he alleges that the statutory requirement violates the 14th Amendment Equal Protection Clause, since it "discriminates against aliens," and further, that it violates the Supremacy Clause of the United States Constitution, since it conflicts with NAFTA.  On March 17, 2008, Plaintiff filed the subject motion for summary judgment.

On May 7, 2008, Defendants filed the subject cross-motion seeking the same relief.  Defendants deny that Education Law § 6704(6) violates the Equal Protection

Clause.  In that regard, they maintain that non-immigrant aliens such as Plaintiff are not

a suspect class, and that the Court need only apply a rational basis standard of review

to the challenged statute, as opposed to a strict scrutiny standard of review.

Additionally, Defendants contend that the statute passes the rational basis test, since it

"is rationally related to a legitimate goal: protection of the citizens of New York."

(Defendants' Memo of Law at 5).  On that point, Defendants maintain that

> veterinarians deal with important issues that effect [sic] the health and
> safety of state residents.  For example, the state has an interest in
> restrictions over people [such as veterinarians who handle] controlled
> substances. . . .   Another example is the role veterinarians have with the
> closely regulated horse racing industry in New York.
> 
>            \*\*\*
> 
> Temporary professionals do not have the same incentive to follow state
> rules and regulations. . . .   A person that has declared themselves to be
> temporarily in this country does not share the same incentive to be law
> abiding as a permanent resident.
> 
>            \*\*\*
> 
> Furthermore, in the event of a violation of law, the state will not be able to
> properly enforce the law enforce the law if a violator is absent from the
> country.

(Defendants' Memo of Law at 6-8).  Defendants also deny that the subject statute

violates the Supremacy Clause, since "states have the power to administer their

professions." (*Id*. at 9).

On June 19, 2008, counsel for the parties appeared before the undersigned for

oral argument of the motion.

## DISCUSSION

The standard for granting summary judgment is well established.  Summary

judgment may not be granted unless "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), cert denied, 517 U.S. 1190 (1996).  Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(e).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d

Cir.1993).

*The Equal Protection Claim*

"The Fourteenth Amendment provides, '(N)or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'" *Graham v. Richardson*, 403 U.S. 365, 371, 91 S.Ct. 1848, 1851 (1971) (citations omitted).   The Supreme Court's "equal protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others." *Engquist v. Oregon Dept. of Agr.*, --- S.Ct. ----, 2008 WL 2329768 at *6 (Jun. 9, 2008) (citations and internal quotation marks omitted).   The first step in analyzing such an Equal Protection claim

> is to determine the proper level of scrutiny. Strict scrutiny demands that classifications be narrowly targeted to serve compelling state interests and is reserved for suspect classifications or classifications that burden fundamental rights. Intermediate scrutiny requires that classifications be substantially related to important governmental interests; it is applied to so-called 'quasi-suspect' classifications. Under rational basis review, a classification need only be rationally related to a legitimate governmental interest.

*Hedgepeth ex rel. Hedgepeth v. Washington Metro. Area Transit Auth.*, 386 F.3d 1148, 1153 (D.C. Cir. 2004) (*citing Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83-84, 120 S.Ct. 631, 645-46, 145 L.Ed.2d 522 (2000)).

It is clear that aliens residing in the United States are entitled to the benefits of the Equal Protection clause: "It has long been settled . . . that the term 'person' in this context encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Graham v. Richardson*, 403 U.S. at 371, 91 S.Ct. at 1851

6

(citations omitted).  Moreover, in a long line of cases the United States Supreme Court

has stated that "aliens" are a suspect class for purposes of Equal Protection analysis:

> [T]he Court's decisions have established that classifications based on
> alienage, like those based on nationality or race, are inherently suspect
> and subject to close judicial scrutiny.  Aliens as a class are a prime
> example of a discrete and insular minority for whom such heightened
> judicial solicitude is appropriate.

*Id.*, 403 U.S. at 371-72, 91 S.Ct. at 1852 (citations omitted); *Sugarman v. Dougall*, 413

U.S. 634, 642 93 S.Ct. 2842, 2847 (1973) ("Our standard of review of statutes that treat

aliens differently from citizens requires a greater degree of precision.").  As the

Supreme Court has explained,

> aliens lawfully residing in this society have many rights which are
> accorded to noncitizens by few other countries. Our cases generally
> reflect a close scrutiny of restraints imposed by States on aliens. But we
> have never suggested that such legislation is inherently invalid, nor have
> we held that all limitations on aliens are suspect.  Rather, beginning with a
> case which involved the denial of welfare assistance essential to life itself,
> the Court has treated certain restrictions on aliens with "heightened
> judicial solicitude," *Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct.
> 1848, 1852, 29 L.Ed.2d 534 (1971), a treatment deemed necessary since
> aliens-pending their eligibility for citizenship-have no direct voice in the
> political processes. *See United States v. Carolene Products Co.*, 304 U.S.
> 144, 152-153, 58 S.Ct. 778, 783-784, 82 L.Ed. 1234, n. 4 (1938).

*Foley v. Connelie*, 435 U.S. 291, 294, 98 S.Ct. 1067, 1070 (1978) (footnotes omitted).

Recently, the Fifth and Sixth Circuit Courts of Appeal have held that while

immigrant aliens are a suspect class, non-immigrant aliens[3] are not, and that state

---

[3]Persons holding TN visas are considered non-immigrant aliens. *See, Estate of Jack ex rel. Blair v. U.S.*, 54 Fed.Cl. 590, 598 (Fed.Cl. 2002) ("Congress, when establishing the TN Temporary Professional visa program, clearly stated its intention that aliens seeking admission under the NAFTA as professionals should be classified as nonimmigrants. 8 U.S.C. § 1184(e)(2). Regulations promulgated pursuant to the NAFTA, while allowing Canadian citizens the opportunity to renew their TN visas, although requiring such renewal applications annually, also require the applicant to have the intent to remain in the country only temporarily. *See* 8 C.F.R. § 214.6(b).").

classifications affecting non-immigrant aliens need only be reviewed under the rational basis standard. *See, LeClerc v. Webb*, 419 F.3d 405 (5th Cir. 2005), *motions for rehearing and for rehearing en banc denied*, 444 F.3d 428 (5th Cir. 2006), *cert. denied*, 127 S.Ct. 3000 (2007) and *League of United Latin American Citizens (LULAC) v. Bredesen*, 500 F.3d 523 (6th Cir. 2007).  In *LeClerc*, the Fifth Circuit  rejected a challenge to a Louisiana law that permitted only U.S. citizens and permanent resident aliens to sit for the state bar examination, and found that the statute did not violate the equal protection rights of non-immigrant aliens holding valid visas, since such non-immigrant aliens were not a suspect class. *See, Leclerc v. Webb*, 419 F.3d at 410 ("Because the level of constitutional protection afforded nonimmigrant aliens is different from that possessed by permanent resident aliens, we hold that the Louisiana rule survives rational basis review."); *see also Id*. at 419 ("Based on the aggregate factual and legal distinctions between resident aliens and nonimmigrant aliens, we conclude that although aliens are a suspect class in general, they are not homogeneous and precedent does not support the proposition that nonimmigrant aliens are a suspect class entitled to have state legislative classifications concerning them subjected to strict scrutiny.").  In that regard, and notwithstanding the broad language used by the Supreme Court to refer to "aliens" generally as a suspect class, the Fifth Circuit found that, "[t]hus far, the Supreme Court has reviewed with strict scrutiny only state laws affecting permanent resident aliens," and that "the Supreme Court has yet expressly to bestow equal protection status on nonimmigrant aliens." *Id*., 419 F.3d at 415, 419. However, the dissent in *LeClerc* argued that the Supreme Court had already included non-immigrant aliens within suspect class of aliens. *Id*.at 426 ("The majority is wary

about 'expanding' strict scrutiny review to nonimmigrant aliens as a distinctive suspect class in the absence of a black letter holding by the U.S. Supreme Court to that effect. I disagree with the majority's reservations because the Supreme Court's statement that 'alienage is a suspect class' by definition includes nonimmigrant aliens as part of that class.").

Similarly, in *LULAC v. Bredesen*, the Sixth Circuit adopted the reasoning of the *LeClerc* decision and held that non-immigrant aliens are not a suspect class for purposes of the Equal Protection Clause. *Id.*, 500 F.3d at 533 ("We find the analysis set forth in *LeClerc* to be persuasive. There are abundant good reasons, both legal and pragmatic, why lawful permanent residents are the only subclass of aliens who have been treated as a suspect class. This case presents no compelling reason why the special protection afforded by suspect-class recognition should be extended to lawful temporary resident aliens."). On the other hand, the dissent in *LULAC* criticized the majority's reasoning, arguing that "[i]t ignores the Supreme Court's general rule that aliens constitute a suspect class and, following the *LeClerc* majority, creates a more specific rule for nonimmigrant aliens where no such rule otherwise exists." *Id.*, 500 F.3d at 543.

In the instant case, Defendants do not attempt to argue that Education Law § 6704(6) would survive a strict-scrutiny analysis, that is, they do not argue that the statute is "narrowly targeted to serve compelling state interests." Nor, for that matter, do they argue that the statute would survive an intermediate-scrutiny review. Instead, they maintain only that, "[u]nder the rational basis test, Education Law § 6704(6) is constitutional." (Def. Memo of Law at 4). Of course, before the Court could apply the

9

rational basis test, it would have to find, as did the courts in the *LeClerc* and *LULAC* cases, that non-immigrant resident aliens are not a suspect class.  However, the Court declines to do so, based on its reading of the aforementioned decisions of the U.S. Supreme Court, which refer to classifications based on "alienage" generally as being inherently suspect.  Instead, the Court finds that the challenged statute must be reviewed under the strict scrutiny standard, and that it fails to pass such scrutiny.

In any event, even assuming *arguendo* that Plaintiff was not a member of a suspect class, and that rational basis scrutiny was appropriate, the Court would nevertheless find that the challenged statute fails to pass muster.  In that regard, the instant case essentially mirrors the facts of *Surmeli v. State of New York*, 412 F.Supp. 394 (S.D.N.Y.) (Weinfeld, J.), *aff'd* 556 F.2d 560 (2d Cir. 1976) (table), *cert denied,* 436 U.S. 903, 98 S.Ct. 2230 (1978), which struck down an almost-identical statute affecting physicians.  The facts of the two cases differ only slightly, in that, in *Surmeli*, the State of New York granted resident alien physicians licenses to practice medicine, which would be revoked if the doctors failed to become citizens after ten years, while here, the state granted Plaintiff a limited license to practice veterinary medicine for four years, with the ability to obtain a full license only if he became a citizen or obtained permanent resident alien status.[4]  In concluding that the statute affecting physicians lacked even so much as a rational basis, the *Surmeli* decision stated:

> The state, of course, has a substantial interest to assure that only those
> who are professionally and morally qualified minister to the needs of the
> mentally and physically ill. But whether the rational relationship test, as the

---

[4]One difference is that the physicians in *Surmeli*, unlike Plaintiff in the instant case, had to file a declaration of intent to become a citizen in order to obtain their licenses.

10

state urges, or the compelling or overriding state interest test is the proper standard, the conclusion is compelled that the state's requirement of citizenship as a condition of continued licensure after it has already found an alien physician qualified and licensed him to practice his profession bears no logical relationship to his continued professional competence and thus lacks a rational basis. The requirement of citizenship after ten years of licensure is not to test or determine the physician's professional competence; that was decided when the plaintiffs were previously licensed by the state and permitted to minister to the ill in the community. Their competency during that period in no respect depended upon their citizenship. Each now has the advantage of additional years of experience. If anything, this experience makes them better qualified than when they were first granted their licenses. Thus the instant case is even stronger than *In re Griffiths*, where the state sought to justify exclusion of aliens from the practice of law; here the state seeks to justify expulsion from the practice of medicine after having found plaintiffs qualified and permitted them to practice for ten years, during which period they were subject to disciplinary action for any professional misconduct. The state's attempted justification is without substance and accordingly the court decrees section 6524(6) of the State Education Law and the rules and regulations promulgated thereunder unconstitutional as  an unlawful discrimination against resident aliens, in violation of the equal protection clause of the Fourteenth Amendment.

*Id*. at 397-98 (footnotes omitted).  Similarly, in this case, Plaintiff is lawfully present in the United States and has been practicing veterinary medicine for four years pursuant to a limited license granted to him by the State of New York.  Consequently, the State's purported concerns about Plaintiff's citizenship/immigration status, such as those involving the handling of controlled substances, do not appear to have any rational relationship to his fitness to practice veterinary medicine.[5]  Accordingly, the Court finds that Education Law § 6704(6) violates the Equal Protection Clause.

*The Supremacy Clause Claim*

At the outset, it is undisputed that "the Supremacy Clause requires the

---

[5]There is no indication in the record that Plaintiff's limited license  restricted his ability to administer controlled substances.

invalidation of any state legislation that burdens or conflicts in any manner with any federal laws or treaties." *DeCanas v. Bica*, 424 U.S. 351, 358, 96 S.Ct. 933, 938 n. 5 (1976) (citation omitted).  It is also clear that "[t]he National Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization," and that "the States can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States." *Graham v. Richardson*, 403 U.S. at 377-78, 91 S.Ct. at 1854-55 (citations and internal quotation marks omitted).  Consequently, "[s]tate laws which impose discriminatory burdens upon the entrance or residence of aliens lawfully within the United States conflict with this constitutionally derived federal power to regulate immigration, and have accordingly been held invalid." *Id.*, 403 U.S. at 378, 91 S.Ct. at 1855; *DeCanas v. Bica*, 424 U.S. at 358, 96 S.Ct. at 938, n. 6 ("Of course, state regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the country is impermissible if it imposes additional burdens not contemplated by Congress.").  On the other hand, the Supreme Court "has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by [Congress's] constitutional power, whether latent or exercised." *DeCanas v. Bica*, 424 U.S. at 355, 96 S.Ct. at 936.

In the instant case, the Court finds that Education Law § 6704(6) conflicts with NAFTA, and therefore violates the Supremacy Clause.  As discussed above, NAFTA provides that Plaintiff may practice veterinary medicine in the United States, as long as he does not intend to permanently reside here.  Conversely, Education Law § 6704(6)

12

provides that Plaintiff may obtain a veterinarian's license only if he intends to reside in

the United States permanently, as evidenced by U.S. citizenship or green card status.

In the Court's view, these statutes are in conflict.  Moreover, by requiring Plaintiff to

become a U.S. citizen or obtain Permanent Resident Alien status, Education Law §

6704(6) imposes an additional burden on him that apparently was not contemplated by

NAFTA.  Accordingly, the Court finds that Education Law § 6704(6) violates the

Supremacy Clause.

CONCLUSION

For all of the foregoing reasons, Plaintiff's motion [#27] for summary judgment is

granted, and Defendants' cross-motion [#35] for summary judgment is denied.

SO ORDERED.

Dated:      June 23, 2008
            Rochester, New York

                                        ENTER:


                                         /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge