UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SIMON E. KIRK,

                       Plaintiff,

        vs.                                      08-CV-6016

NEW YORK STATE DEPARTMENT OF EDUCATION;       Hon. Charles J. Siragusa
RICHARD P. MILLS, Commissioner of Education;    United States District Judge
NEW YORK STATE BOARD OF REGENTS; and
ROBERT M. BENNETT, Chancellor of the
New York State Board of Regents,

                       Defendants
_____


# MEMORANDUM OF LAW
## IN SUPPORT OF MOTION BY PLAINTIFF SIMON E. KIRK
### FOR AN ALLOWANCE OF ATTORNEYS' FEES

On June 23, 2008, the Court issued a Decision and Order granting the relief sought by the plaintiff in his Complaint in this section 1983 action. A corresponding judgment was entered on June 24, 2008. The plaintiff now moves, pursuant to 42 U.S.C. § 1988(b), for an allowance of reasonable attorneys' fees against the plaintiff.


## POINT I

### AS THE PREVAILING PARTY, THE PLAINTIFF IS ENTITLED TO RECOVER HIS ATTORNEYS' FEES

As the statute indicates, an award of attorneys' fees in a section 1983 action is left to the discretion of the Court:

> In any action or proceeding to enforce a provision of sections . . . 1983 . . . of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as party of the costs . . . ..

- 2 -

42 U.S.C. § 1988(b).  However, the Supreme Court has stated that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley v. Eckerhart*, 461 U.S. 424, 429, 76 L. Ed. 2d 40 (1983).  There is thus a statutory presumption that attorneys' fees should be awarded to successful plaintiffs in anything other than unusual situations.  *Williams v. Hanover Hous. Auth.*, 113 F.3d 1294, 1300 (1st Cir. 1997).

In determining a reasonable attorneys' fee, the starting point is the calculation of what has traditionally been referred to as the "lodestar" amount, and more recently as a "presumptively reasonable fee" (*see Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2007)), which is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate.  *E.g.*, *Luca v. County of Nassau*, 2008 U.S. Dist. LEXIS 47973 (E.D. N.Y. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 76 L. Ed. 2d 40 (1983)).

In exercising its discretion, district courts are now directed to "bear in mind all of the case specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," defined as "the rate a paying client would be willing to pay."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007).  Those factors include what the federal courts have referred to as the *Johnson* factors (from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th

- 3 -

Cir. 1974),[1] which are very similar to what New York practitioners have long known as the

*Freeman* factors.[2]  Obviously, in different cases, different weight will be given to different

factors.  In the present case, it is respectfully submitted that the Court should consider the

following circumstances.

**Time and labor required.**  The accompanying Declaration of Margaret A. Catillaz shows

that the efforts of four Harter Secrest & Emery LLP timekeepers were involved in commencing

and prosecuting this action to its conclusion.  Ms. Catillaz has attached to her Declaration an

itemized list of time entries, which corroborates her averment that the Firm's attorneys, and in

particular Ms. Catillaz, a senior immigration lawyer, and A. Paul Britton, a senior litigator,

---

[1] The court in Johnson held that the following factors should be considered in determining a reasonable attorneys' fee: 1) the time and labor required; 2) the novelty and complexity of the questions presented; 3) the skill required to perform the legal services; 4) the extent to which the attorneys handling the matter were precluded from undertaking other engagements as a result of taking on the matter; 5) the fee customarily charged for similar work; 6) the nature of the fee arrangement – that is, whether it was fixed or contingent; 7) time limitations experienced in the case; 8) the amount at stake and result achieved; 9) the ability, experience, and reputation of the attorneys; 10) the inherent undesirability of the taking on the matter; 11) the nature and length of the professional relationship between the attorneys and the client; and 12) the extent of fee awards in similar cases.  *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)

[2] In *In re Freeman*, 34 N.Y.2d 1, 355 N.Y.S.2d 336 (1974), the New York Court of

Appeals stated as follows:

> Long tradition and just about a universal one in American practice is for the fixation of lawyers' fees to be determined on the following factors: time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer's experience, ability and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved

*In re Freeman*, 34 N.Y.2d 1, 9, 355 N.Y.S.2d 336 (1974).

- 4 -

worked efficiently on the matter.  The services included Ms. Catillaz's initial meetings with

Simon Kirk, in which her expertise led her to recognize that he had a potentially meritorious

claim under section 1983; the performing of needed investigation and legal research; the drafting

and filing of a Complaint; defending against a venue motion; avoiding discovery; moving for

summary judgment on multiple constitutional grounds; and defending a cross-motion for

summary judgment.  A total of 236.1 hours of time was recorded by two senior lawyers, who

performed complementary roles, one junior lawyer, and an experienced paralegal.

  ***Novelty and complexity of the matter, and the skill required to perform the services***.  As

Ms. Catillaz indicates in paragraph 36 of her Declaration, and as the Court is aware from its

consideration of the motions before it, this was not an ordinary civil rights action.  The case

involved unique underlying facts and constitutional arguments, and it required a sophisticated

knowledge of federal immigration law together with the ability of counsel to research, analyze,

and apply to the case a extensive body of equal protection law.

  ***Fee customarily charged for similar work***.  On this motion, the Catillaz Declaration

shows that the time of Ms. Catillaz, Mr. Britton, Ms. McFadden, and Ms. Sellers is customarily

billed to the Firm's clients at the hourly billing rates set forth in her Declaration and on the

attached exhibit.  A district court has recently noted that the hourly rate that plaintiff's counsel

actually charges her clients is "obviously strong evidence" of what the market will bear.  *Rozell*

*v. Ross-Holst*, 2008 U.S. Dist. LEXIS 41609, at *34 (S.D.N.Y. 2008).

  The accompanying affidavit of Angelo Faraci, Esq., an experienced lawyer and litigator

practicing in Monroe County, confirms that these hourly rates are consistent with those charged

by other lawyers of similar ability and experience in the Monroe County legal community.  The

- 5 -

accompanying affidavit of Daryl Buffenstein, Esq., an experienced immigration lawyer practicing in Atlanta, Georgia, confirms that Ms. Catillaz's hourly rates are actually significantly lower than hourly rates prevailing among the national immigration bar, particularly for services of this nature, involving complex issues of federal civil procedure, immigration law, and federal constitutional law, performed by an immigration lawyer of her level of experience, skill, expertise, and national reputation.

> The Second Circuit has recently stated as follows:
>
> We now clarify that a district court may use an out-of-district hourly rate – or some rate in between the out-of-district rate sought and the rates charged by local attorneys – in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates.
> . . .
> The legal communities of today are increasingly interconnected. To define markets simply by geography is too simplistic. Sometimes, legal markets may be defined by practice area.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 192 (2d Cir. 2007). Thus, bearing in mind that lawyers in the national immigration bar with expertise and experience comparable to Ms. Catillaz's are charging significantly more for their services, an even higher base hourly rate for her time would be warranted.

**Time limitations experienced in the case**. As the Court is aware, because of the impending expiration of Dr. Kirk's temporary license, a litigation strategy was needed that would lead to a final determination in a short period of time.

**The result achieved.** This action achieved its objectives for Dr. Kirk in a timely manner, a factor critical to an attorneys' fee award. *Farrar v. Hobby*, 506 U.S. 103, 114, 121 L. Ed. 2d 494 (1992); *Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005). "The fact that

- 6 -

plaintiffs received no monetary relief is of no import, since . . . the primary goal of the plaintiffs in this case was to obtain injunctive relief." *Friend v. Kolodzieczak*, 72 F.3d 1386, 1390 (9th Cir. 1995). Where, as here, a plaintiff obtains "virtually all" the relief sought in his Complaint, he is entitled to a fully compensatory fee." *NAACP v. Town of E. Haven*, 259 F.3d 113, 122 (2d Cir. 2002).

In *West Virginians for Life v. Smith*, 952 F. Supp. 342 (S.D. W. Va. 1996), the plaintiffs brought an action raising First Amendment challenges to provisions in state campaign laws. The action was ultimately successful in that the plaintiffs obtained the injunction that had sought; no damages were sought or awarded. *Id*. at 347. The court made a full allowance of attorneys' fees after a review of the relevant factors.

*Ability, experience, and reputation of the attorneys*. It is respectfully submitted that the senior lawyers primarily responsible for this matter, Ms. Catillaz and Mr. Britton, have a high degree of ability and experience, along with high professional reputations in the Monroe County legal community and, in Ms. Catillaz's case, the national immigration bar.

*The inherent undesirability of taking on the matter*. As Ms. Catillaz indicates in paragraph 37 of her Declaration, it is apparent that, in the past, economic and parochial considerations have deterred other lawyers from taking on cases for professionals in situations like Dr. Kirk's.

*Nature and length of the professional relationship with this client*. Dr. Kirk was a new client to Ms. Catillaz and to Harter Secrest & Emery LLP.

*Presumptively reasonable fee*. As the Second Circuit stated in *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004), in determining reasonable attorneys' fees, "courts should generally follow

- 7 -

the framework set forth" in *Hensley v. Eckerhart*, 461 U.S. 424, 429, 76 L. Ed. 2d 40 (1983).

"Under Hensley, "the starting point for the determination of a reasonable fee is the calculation of

the lodestar amount." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Given all the relevant circumstances, the plaintiff submits that an appropriate lodestar amount, or

presumptively reasonable fee, in this matter is $70,627.50.

> *Disbursements and expenses*. An award that includes the Firm's disbursements and

expenses, including the Court's $350 filing fee and charges for service of process, messenger

delivery, postage, copying, and fax service, in the amount of $674.97 (see Exhibit A to Catillaz

Declaration) is also appropriate. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.

1998); *Lake v. Schoharie County Comm'r of Soc. Servs.*, 2006 U.S. Dist. LEXIS 49168, at *36-

37 (N.D.N.Y. 2006). An allowance of attorneys' fees should include these as well.


## POINT II

### THE COURT SHOULD CONSIDER ADJUSTING THE PRESUMPTIVELY REASONABLE FEE UPWARD

> Once a lodestar, or presumptively reasonable fee, amount is determined, a district court

has discretion to adjust it upward or downward in exceptional cases, taking into account,

especially, the results obtained. *Orchano v. Advanced Recovery*, 107 F.3d 94, 98 (2d Cir. 1997);

*Nextel Partners, Inc. v. Town of Amherst*, 251 F. Supp. 2d 1187, 1200 (W.D.N.Y. 2003)

(Siragusa, J.). Under the circumstances, the plaintiff respectfully asks that the Court consider an

upward adjustment to the presumptively reasonable fee.

> In considering a possible upward adjustment, the degree of a plaintiff's success in the

litigation is the most critical factor. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 76 L. Ed. 2d 40, 51

- 8 -

(1983). Here, counsel achieved the precise result for their client that was sought in the lawsuit: the specific declaratory and injunctive relief that Dr. Kirk needed in order to obtain a veterinary license.

Ultimately, the Court agreed with each of counsel's arguments: (a) that venue properly lay in the Western District of New York, (b) that "strict scrutiny" should be applied to the citizenship requirements under New York Education Law Section 6704, (c) that there was not, in any event, even a "rational basis" for those requirements, and (d) that those requirements were not consistent with NAFTA and violated the Supremacy Clause. As a result, Dr. Kirk will be able to continue his practice with a new, unlimited New York State veterinary license after July 31, 2008.

Moreover, section 1888 "was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements." *Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 576-78, 91 L. Ed. 2d 466 (1986)). This case had little potential for a monetary recovery; the plaintiff could expect nothing more than declaratory and injunctive relief. The expense of prosecuting such a lawsuit has clearly been a deterrent to other young, foreign-born professionals, many of whom have chosen simply to leave the state rather than attempt to finance a lawsuit against the State Education Department. Catillaz Declaration ¶¶ 37-38. These circumstances militate in favor of a significant upward adjustment of the presumptively reasonable fee.

- 9 -

### *Conclusion*

For the foregoing reasons, the plaintiff respectfully seeks an allowance of attorneys' fees in the amount of $70,627.50, adjusted upward to reflect, among other things, the results achieved and the desirability of encouraging competent attorneys to undertake matters of this nature, together with disbursements and expenses in the amount of $674.97, for a total allowance of no less than $71,302.47.


July 21, 2008                                 s/Margaret A. Catillaz_____
                                              Margaret A. Catillaz, Esq.
                                              HARTER SECREST & EMERY LLP
                                              *Attorneys for Simon E. Kirk*
                                              1600 Bausch & Lomb Place
                                              Rochester, New York 14604-2711
                                              585-232-6500
                                              mcatillaz@hselaw.com